CANON COMPUTER SYSTEMS, INC.,
Canon U.S.A., Inc., and Canon,
Inc., Plaintiffs–Appellees,

v.

NU–KOTE INTERNATIONAL, INC.,
Defendant–Appellant.

Nos. 97–1248, 97–1290.

United States Court of Appeals,
Federal Circuit.

Jan. 8, 1998.

Nicholas M. Cannella, Fitzpatrick, Cella, Harper & Scinto, of New York City, argued for plaintiffs-appellees. With him on the brief were Joseph M. Fitzpatrick, Joseph M. O'Malley, Jr., and Bruce M. Wexler. Of counsel were John A. O'Brien, and Pasquale A. Razzano. Also on the brief was Donald L. Morrow, Paul, Hastings, Janofsky & Walker, L.L.P., of Costa Mesa, California.

Ronald S. Katz, Coudert Brothers, of San Francisco, California, argued for defendant-appellant. With him on the brief were David Schnapf and J. Bruce McCubbrey. Of counsel was Victoria E. Brieant.

Before LOURIE, RADER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Nu–Kote, International, Inc. appeals from the decision of the United States District Court for the Central District of California granting Canon Computer Systems, Inc., Canon U.S.A., Inc. and Canon, Inc.'s (collectively "Canon's") motion for a preliminary injunction. *Canon Computer Sys., Inc. v. Nu–Kote Int'l, Inc.*, Docket No. CV 95–288 (Feb. 28, 1997) (entering denial of Nu–Kote's motion to dissolve the preliminary injunction and entering findings of fact and conclusions of law in support of the January 6, 1997 order granting preliminary injunction). Nu–Kote argues that the district court abused its discretion in granting the preliminary injunction, largely by making clearly erroneous factual findings on the issues of infringement and validity. Because the district court did not base its issuance of the preliminary injunction on clearly erroneous fact findings or on erroneous legal conclusions, nor did it otherwise abuse its discretion, we affirm.

## BACKGROUND

Canon accused Nu–Kote of infringing its patent, U.S. 5,509,140, which relates to a replaceable ink cartridge for "bubble jet" printers. Claim 1 was the only claim asserted for purposes of the preliminary injunction motion. Claim 1 reads, in pertinent part and with emphasis added:

A replaceable ink cartridge ... comprising:

a container formed by a front wall, back wall, top wall and bottom wall, each of which is elongated, and two side walls providing major surfaces of said container;

a partition attached to said side walls and extending from said top wall toward said bottom wall to divide said container into a first chamber and a second chamber communicating with each other through an opening formed by said partition proximate to said bottom wall;

said first chamber being defined by said partition and said back wall, top wall, bottom wall and said two side walls of said container and being generally sealed from ambient air except through said opening;

. . .

at least one groove in said partition extending from said opening to a position spaced from said top wall for *forming an air flow passage* from said second chamber to said first chamber....

Figure 19 from the patent, shown below, illustrates one of the embodiments of the invention. As ink (3) flows out of the cartridge during printing, air enters the second chamber (4), which contains a sponge-like material, through the air vent (13). When the ink level reaches the top of the groove (C), air flows down the groove and into the first chamber (6), allowing ink (9) to flow through the opening (8) into the sponge-like material.

**An Embodiment of the Invention The Accused Device**

FIG. 19B

FIG. 19A

FIG. 19C

Nu–Kote makes and sells replaceable ink cartridges that are compatible with Canon's printers. For purposes of illustration, a depiction of the Nu–Kote cartridge, taken from one of Canon's exhibits, is reproduced above. Although the specific dimensions of the various Nu–Kote cartridges differ, all the cartridges in dispute admittedly have a grooved partition that separates a chamber containing a sponge from another chamber that does not contain a sponge. Because the cartridges vary only in ways immaterial to this appeal, they will be collectively referred to as "the cartridge."

Nu–Kote challenges both the validity of the patent and the charge of infringement. Nu–Kote asserts that the patent is invalid because certain named inventors on the patent were incorrectly joined. The infringement dispute primarily concerns whether the claimed partition reads on the partition in the Nu–Kote cartridge. Specifically, Nu–Kote argues that the groove in its partition does not act as an "air flow passage" and that its partition does not define the claimed "first chamber," which must also be defined by the back wall of the cartridge, but instead divides the chamber containing the sponge from an unclaimed middle chamber. Nu–Kote asserts that a second "partition," called a "stiffening rib" by Canon, which descends a portion of the way down the walls of the cartridge, divides its ink chamber into two distinct chambers.

The district court granted Canon's motion for a preliminary injunction after determining that Canon had established a likelihood of success on the merits of the infringement action and after applying the four-part test articulated by this court. *See Nutrition 21 v. United States,* 930 F.2d 867, 869, 18 USPQ2d 1347, 1348–49 (Fed.Cir.1991); *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988).

Following the initial order granting the preliminary injunction, Nu–Kote moved to dissolve the injunction on the ground that new evidence rendered an ultimate finding of infringement unlikely. It submitted a videotape, which the district court considered and which purported to show that the groove in a Nu–Kote cartridge did not act as an "air flow passage." Thus, Nu–Kote argued, its cartridge lacked the claimed grooved partition, which must form an air flow passage. Canon responded with its own videotape, demonstrating that the groove in a Nu–Kote cartridge that was acquired from a retail establishment did act as an "air flow passage," at least under certain conditions. The district court reviewed the videotapes and denied Nu–Kote's motion for the reasons stated by Canon in its opposition. Canon's opposition indicated that the evidence could have been submitted prior to the court's ruling on the injunction and was thus untimely, and further reasoned that the video was unpersuasive and contradicted by Canon's video. Nu–Kote appeals from the grant of the preliminary injunction and from the denial of its motion to dissolve the injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1), (c)(1) (1994).

## DISCUSSION

■ In order for Nu–Kote to prevail on appeal, it must demonstrate that the district

court abused its discretion in granting Canon's motion for the preliminary injunction. *See Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir. 1983). An abuse of discretion may be established by showing that the district court made a clear error of judgment, or based its decision on an erroneous legal conclusion or clearly erroneous factual findings. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772, 28 USPQ2d 1378, 1380 (Fed.Cir.1993).

■ Nu–Kote argues that the grant of the preliminary injunction was based on the erroneous finding that Canon made a strong showing on the issue of validity. Notwithstanding the presumption of validity, *see* 35 U.S.C. § 282 (1994), Nu–Kote asserts that the presence of sixteen named inventors casts sufficient doubt on the validity of the patent, such that the burden of going forward shifted to Canon. In Nu–Kote's own words, "it is absurd to believe that it took sixteen people to invent a simple plastic container of ink." Nu–Kote thus contends that the burden is on Canon to substantiate the inventive contribution of each of the named inventors. We disagree. It is true that Canon carries the burden of establishing a likelihood of success on the validity issue and thus must show that Nu–Kote will not likely prove that the patent is invalid. *See Nutrition 21*, 930 F.2d at 869–70, 18 USPQ2d at 1349–50. However, a patent is presumed valid, and this presumption exists at every stage of the litigation. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566, 37 USPQ2d 1618, 1624 (Fed.Cir.1996); *see also H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387–88, 2 USPQ2d 1926, 1927–28 (Fed.Cir.1987), *overruled on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 34 U.S.P.Q.2d 1321 (Fed.Cir. 1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). Ultimately, at trial on the merits, Canon need only submit sufficient evidence to rebut any proof of invalidity offered by Nu–Kote. Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue. *See H.H. Robertson, Co.*, 820 F.2d at 388, 2 USPQ2d at 1928 (stating that a preliminary injunction is determined "in the context of the presumptions and burdens that inhere at trial on the merits").

■ Nu–Kote argues that the sheer number of named inventors is evidence of the patent's invalidity. We disagree. Improper inventorship is not presumed simply because a large number of individuals are listed on the patent as joint inventors. On the contrary, the "inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980, 41 USPQ2d 1782, 1785–86 (Fed.Cir.) (citation omitted), *cert. denied*, ―― U.S. ――, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997). Attempting to rebut this presumption, Nu–Kote deposed at least fourteen of the named inventors. In deposition after deposition, the named inventors testified regarding the conception of the invention to the best of their recollection. Although the inventors were incapable of recalling each individual's specific contribution, they all generally recalled collaborating together in a series of meetings to produce the patented invention. As any member of a large discussion group well knows, it is often difficult to remember who first said what. Significantly, none of the inventors testified that any named inventor was not involved in that collaborative effort. We note in passing that the patent has 66 figures and 19 embodiments, indicating the plausibility of contributions by multiple inventors. Nu–Kote has made no showing to rebut the presumption, and accordingly Canon was under no obligation to substantiate each inventor's contribution.

■ Nu-Kote also argues that misjoinder has been established with regard to two of the named inventors because they are not listed on any of the foreign priority documents. Canon responds that the two inventors were properly absent from the priority documents because their only contribution was to dependent claim 6, the subject matter of which Canon asserts is not described in the priority documents.

More importantly, a strong showing of misjoinder by Nu–Kote would not necessarily preclude the imposition of a preliminary in-

junction. Incorrect inventorship is a technical defect in a patent that may be easily curable. *See* 35 U.S.C. § 256 (1994) ("The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section."). Even assuming misjoinder, an inventor's persuasive explanation of how any such error occurred will usually suffice to show a likelihood of success on the issue of validity. In this case, the patentee has introduced evidence showing that all of the inventors believed they jointly collaborated to produce the invention. Furthermore, Canon has identified the specific contributions of the two inventors who are not listed on the priority documents. Thus, as the district court noted, the patentee would have an opportunity to correct any misjoinder, should an inventorship problem arise. Accordingly, we discern no clear error in the district court's finding that the patentee made a strong showing on the validity issue.

■ Nu–Kote also argues that Canon failed to make a strong showing of infringement. Nu–Kote focuses on two limitations in the claim, asserting that (1) the groove in Nu–Kote's cartridge does not form an "air flow passage" as required by the claim, and (2) the Nu–Kote cartridge lacks the claimed "first chamber." Regarding the "air flow passage" limitation, Nu–Kote asserts that the testimony of Canon's expert was insufficient to satisfy Canon's burden of showing infringement at the preliminary injunction stage, especially in the face of Nu–Kote's evidence to the contrary. Canon replies that its evidence was more than sufficient given Nu–Kote's concession that air flowing through the cartridge will follow the path of least resistance.

The initial testimony of Canon's expert was based on a visual inspection of the accused cartridge. The expert compared the accused cartridge to the claims of the '140 patent, prepared a claim chart, submitted an affidavit explaining his findings, and concluded that the claims read on the accused cartridge. The expert explained why air would naturally flow through the groove rather than through the sponge, stating "[i]t is un-disputed that air follows the path of least resistance. The path of least resistance for the air is through the groove—where the air does not need to work its way either through the pore structure of the sponge or the ink." Nu–Kote did not rebut this testimony with any contrary argument explaining why the groove in its cartridge does not form an air flow passage. Rather, Nu–Kote repeats its conclusory statement that the density and shape of the sponge have a significant impact on air flow behavior, without explaining the nature of that impact or the mechanism by which it necessarily avoids infringement. Nor did it explain why the groove in its cartridge does not form a path of least resistance. Rather, it simply disputed the sufficiency and accuracy of the expert's testimony and relied on its videotape to rebut Canon's arguments.

Nu–Kote has also failed to establish clear error in the district court's finding that the groove in Nu–Kote's cartridges likely forms an air flow passage. First, the district court would have been within its discretion to disregard Nu–Kote's video, given its untimeliness. Moreover, the video is not particularly probative. Even assuming that Nu–Kote's video establishes that its cartridge will not infringe under a particular set of controlled circumstances (specifically, while maintaining a constant flow rate comparable to that which occurs when printing graphics), this has little bearing on whether its cartridge will avoid infringement under other foreseeable operating conditions. It is also not clear from the video whether the test was performed with the ink level at or below the top of the groove, the point at which the patent's written description states that an "air introduction passage" is formed. *See* U.S. Patent '140, Col. 17, lines 54–67. Accordingly, the district court did not clearly err by finding that Canon made a strong showing that Nu–Kote's groove forms an air flow passage.

■ Nu–Kote's second attack on the district court's likelihood-of-infringement finding turns on claim construction. Nu–Kote asserts that claim 1 cannot read on cartridges that contain more than one ink reservoir chamber, given the claim's precise definition of the first chamber: "said first

chamber being defined by said partition [containing the groove] and said back wall...." Nu–Kote argues that the claim does not read on a cartridge with more than one ink reservoir chamber because such a cartridge would not have an identifiable chamber bounded by both the partition and the back wall. Canon responds that the claimed "first chamber" distinguishes the portion of the cartridge containing the reservoir of liquid ink from that portion of the cartridge that contains the sponge-like material, which resides in the "second chamber."

We agree with Canon that the claimed "first chamber" may be subdivided into multiple ink chambers. The claim itself defines the first chamber as being bounded by the grooved partition and the back wall. It does not define the "first chamber" as being bounded by the grooved partition and the nearest opposite partition. Describing one embodiment of the invention, the specification states that "the ink chamber is separated into four chambers." Thus, multiple interconnected ink chambers between the grooved partition and the back wall can collectively comprise the "first chamber" of claim 1. Whether called a stiffening rib or a partition, the piece of plastic in Nu–Kote's cartridge is simply an additional component added inside the "first chamber" that does not prevent the cartridge from falling within the scope of the claim. *See A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703, 218 USPQ 965, 967–68 (Fed.Cir.1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."). Accordingly, the district court did not clearly err in finding that Canon made a strong showing of infringement.

 Furthermore, because the district court did not clearly err in concluding that Canon made a strong showing of a likelihood of success on the merits, Canon is entitled to a presumption of irreparable harm. *See Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1232–33, 227 USPQ 289, 291–92 (Fed. Cir.1985). Finally, Nu–Kote has not shown the district court's factual finding of potential irreparable harm, based on the nature of the patented technology and the potential loss of market share, to be clearly erroneous.

We have considered Nu–Kote's other arguments and find them unpersuasive.

## CONCLUSION

The district court properly applied the law and did not clearly err in finding that Canon made a strong showing on both the infringement and validity issues. The district court did not abuse its discretion by granting Canon's motion for a preliminary injunction. Accordingly, the district court's order issuing the preliminary injunction is affirmed.

*AFFIRMED.*