**APPLIED CONCEPTS, INC.,**
**Plaintiff–Appellee,**

v.

**OLYMPIA INDUSTRIAL, INC.,**
**Defendant–Appellant.**

No. 00–1418.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 10, 2001.

Rehearing and Rehearing en Banc
Denied Aug. 14, 2001.

Before LOURIE, SCHALL, and LINN, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Olympia Industrial, Inc. appeals from the decision of the United States District Court for the Western District of Pennsylvania granting the motion of Applied Concepts, Inc. ("ACI") for a preliminary injunction enjoining Olympia from making, using, selling, offering for sale, or importing its Turbopliers product, which allegedly infringes claim 1 of U.S. Patent 4,651,-598. *Applied Concepts, Inc. v. Olympia Indus., Inc.*, No. 99–489 (W.D. Pa. June 6, 2000). Because the district court erred in construing the phrase "slideable and pivotable fastening means," we *vacate* and *remand.*

## DISCUSSION

ACI possesses an exclusive license to the '598 patent, which relates to self-ad-justing utility pliers having a "tooth and pawl" construction. '598 patent, col. 1, II. 5–7. According to the written description, the pliers include first and second handle members, each having a respective "jaw end." *Id.* at col. 1, II. 24–27. One jaw end includes an elongated channel with a series of "teeth" along one side. *Id.* at col. 1, II. 27–30. A "pawl member" is "pivotably connected" to the other jaw end and is "confined within the elongated channel by a fastener that assembles the handle members together." *Id.* at col. 1, II. 30–33. By moving the two handles and their respective jaws toward one another, the pawl is "cammed *into a position where it is in* locking engagement between two adjacent teeth." *Id.* at col. 1, II. 39–43.

Claim 1, the only claim at issue, reads in relevant part:

1. Self-adjusting utility pliers for automatically gripping workpieces of different sizes, comprising:

first and second rigid elongated members each having a jaw end, a *handle end,* and an intermediate neck portion;

*slideable and pivotable fastening means* connecting the members between their neck portions and permitting the jaw ends to move toward each other in a sliding action in response to an initial manual force being applied to close the handle ends toward each other to grasp a workpiece between the jaw ends;

. . . . .

the fastening means *adapted to halt further sliding action of the members in response to the jaw ends contacting the workpiece and to then translate the manual force on the handle members into a pivoting gripping action of the jaw ends against the workpiece.*

*Id.* at col. 5, I. 61 to col. 6, I. 13 (emphasis and formatting added).

Olympia imports from Taiwan and sells in the United States self-adjusting pliers known as "Turbopliers." *Applied Concepts*, slip op. at 2. On March 20, 1999, ACI filed this suit against Olympia alleging that Olympia's Turbopliers infringed claim 1 of the '598 patent. *Id.* at 1. ACI moved for a preliminary injunction prohibiting Olympia from making, selling, offering for sale, or importing its Turbopliers product. *Id.* The district court granted ACI's motion after determining that ACI had established a likelihood of prevailing on the merits on the issues of validity and infringement. *Id.* at 13–14. The court also found that ACI would suffer irreparable harm if the injunction was not granted, and that the balance of hardships and the public interest weighed in favor of granting ACI's motion for a preliminary injunction. *Id.* at 28–32. Olympia now appeals from that decision. We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1) (1994).

The grant or denial of a preliminary injunction pursuant to 35 U.S.C. § 283 is within the discretion of the district court. *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364, 42 USPQ2d 1001, 1003 (Fed.Cir.1997). Thus, in order for Olympia to prevail on appeal, it must demonstrate that the district court abused its discretion in granting ACI's motion for a preliminary injunction. *Canon Computer Sys., Inc. v. Nu–Kote Int'l, Inc.*, 134 F.3d 1085, 1088, 45 USPQ2d 1355, 1358 (Fed. Cir.1998). "An abuse of discretion may be established by showing that the district court made a clear error of judgment, or based its decision on an erroneous legal conclusion or clearly erroneous factual findings." *Id.* As the moving party, ACI was required to show: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction were not granted; (3) the balance of the hardships; and (4) the impact of the injunction on the

public interest." *Genentech*, 108 F.3d at 1364, 42 USPQ2d at 1003.

On appeal, Olympia challenges the district court's claim construction. Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed. Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir. 1996).

Olympia argues that the district court erred in construing the terms "handle end" and "slideable and pivotable fastening means." Olympia argues that, given their ordinary meaning, the terms "handle" and "handle end," which are used interchangeably in the patent, refer to the portion of the claimed pliers that must be grasped by the user's hand. With respect to the "slideable and pivotable fastening means" limitation, Olympia argues that the claimed "fastening means" must *itself* be capable of sliding and pivoting, as well as enabling the jaws of the pliers to slide and pivot. Olympia also argues that the district court's infringement analysis is flawed, as it is based on its erroneous claim construction.

ACI responds that the district court correctly construed the disputed limitations. ACI argues that the "handle end" is the portion of the claimed "first and second rigid elongated members" that is located opposite the "jaw end," and upon which manual force is applied to cause the jaw ends to slide and pivot. ACI contends

that the district court correctly found that Olympia's Turbopliers satisfy this limitation either literally or under the doctrine of equivalents, and that Olympia has not challenged the court's finding of equiva-lence. ACI also argues that the "slideable and pivotable fastening means" limitation only requires structure that performs the claimed functions of sliding and pivoting the rigid elongated members and does not require a separate pivoting or rotatable pawl structure, which it asserts is an element only of the preferred embodiment. ACI further contends that, whether or not the fastening means itself must rotate, the accused Turbopliers literally satisfy this limitation.

■ We agree with ACI that the district court correctly construed the "handle end" limitation, and we discern no error in the court's findings that this limitation is satisfied by Olympia's Turbopliers. As the court held, the "handle end" is located opposite the "jaw end" and is the portion of the rigid elongated member that receives a force to cause movement of the jaws; the "handle end" need not be specially configured to fit comfortably in the human hand or receive force from flesh contact during operation of the tool. However, with regard to the "slideable and pivotable fastening means" limitation, we conclude that the district court's claim construction was erroneous. Such an error of law requires that the preliminary injunction be vacated.

■ As an initial matter, we agree with the parties that the "slideable and pivotable fastening means" limitation should be construed as a means-plus-function limitation under § 112, ¶ 6. In determining whether a claim limitation is a means-plus-function limitation, "the use of the word 'means' creates a presumption that § 112, ¶ 6 applies." *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 703, 48 USPQ2d 1880, 1886 (Fed.Cir.1998). However, a limitation that uses the word "means," but does not recite a function that corresponds to the means, does not invoke § 112, ¶ 6. *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1302, 50 USPQ2d 1429, 1434 (Fed.Cir.1999). Likewise, even when a limitation does recite a function, if it also recites sufficiently definite structure for performing that function, then § 112, ¶ 6 does not apply. *Id.*

In this case, the "slideable and pivotable fastening means" limitation uses the word "means" and therefore is presumed to invoke § 112, ¶ 6. Moreover, the claim language recites the corresponding functions of "fastening" and "connecting the members between their neck portions and permitting the jaw ends to move toward each other" without reciting any structure for performing those functions. '598 patent, col. 5, I. 66 to col. 6, I. 3. The claim further recites that the "fastening means" is "adapted to halt further sliding action of the members in response to the jaw ends contacting the workpiece and to then translate the manual force on the handle members into a pivoting gripping action of the jaw ends against the workpiece," but does not recite any definite structure for performing any of the claimed functions. *Id.* at col. 6, II. 8–13. Accordingly, the district court correctly concluded that the "slideable and pivotable fastening means" falls within the purview of § 112, ¶ 6.

■ However, we agree with Olympia that the district court incorrectly identified the structure in the specification that corresponds to the "slideable and pivotable fastening means" limitation. In construing a means-plus-function limitation, a court must identify both the claimed function and the corresponding structure in the written description for performing that function. *Micro Chem., Inc. v. Great Plains Chem. Co.,* 194 F.3d 1250, 1258, 52

USPQ2d 1258, 1263 (Fed.Cir.1999). Without identifying the claimed functions of "fastening" and "connecting," the district court concluded that the structure in the written description corresponding to the "slideable and pivotable fastening means" included: (i) an "elongated channel or slot" and (ii) a "post." *Applied Concepts,* slip op. at 22. This is an incomplete analysis. Noticeably absent from the district court's analysis of the corresponding structure is any mention of a "pawl" or "pawl member," which is an integral part of the claimed invention. *See, e.g.,* '598 patent, at col. 1, II. 5–7 ("The invention pertains to utility pliers having cooperating tooth and pawl construction."); col. 1, II. 30–33 ("A pawl member is pivotably connected to the other jaw end and is confined within the elongated channel."). Moreover, the written description expressly states that "it should be appreciated that the *pawl* 26, the bolt 28 and the interaction of the pawl with the specially configured slot 20 *constitutes a fastening means." Id.* at col. 3, I. 68 to col. 4, I. 2. (emphasis added). Thus, the corresponding structure in the written description for performing the claimed functions of "slideable and pivotable fastening means" must include: (i) a "pawl," (ii) a "bolt," and (iii) a "specially configured slot."

Furthermore, the plain language of the claim and the written description make clear that the "fastening means" must be "slideable and pivotable." According to the written description, the "fastening means" includes a "pawl member," *id.,* which has a "planar surface 34, a camming surface 36 and a tip 38," *id.* at col. 2, II. 36–37. When the first and second elongated members of the pliers are moved toward one another "to cause their respective jaws to engage a workpiece," the pawl comes into contact "with the channel sidewall along the series of teeth." *Id.* at col. 3, II. 15–21. "As this occurs, the camming surface *slides* over two of the teeth 24 causing the pawl member to *pivot* so that its tip 38 enters between two adjacent teeth 24 creating a positive gripping and holding force on the workpiece 62." *Id.* at col. 3, II. 21–26 (emphasis added). Accordingly, the "fastening means" includes a pawl member that is both "slideable and pivotable."

ACI contends that the terms "slideable and pivotable" refer to the sliding and pivoting of the rigid elongated members, and do not refer to any rotating or pivoting action of the pawl. We disagree. The written description explains that when the handle ends are squeezed toward each other, "[t]his action results in the member 12 pivoting clockwise on the pivot pin 42 whereby the jaw end 12a moves toward the jaw end 16a, and *the pawl 26 advances in a sliding action* up the channel or slot 20 ... until the jaws stop in contact with the workpiece." *Id.* at col. 3, II. 41–47 (emphasis added). After the jaws contact the workpiece, "*a pivoting motion* between the neck portions 12c and 16c ... *is translated to the pawl* 26," causing it to move against the channel sidewall having the series of teeth. *Id.* at col. 3, II. 47–52 (emphasis added). This causes the cam, *i.e.,* the pawl, "*to pivot* clockwise whereby its tip 38 will engage in a notch between two of the teeth and perform a locking action against further sliding action between the neck portions 12c and 16c." *Id.* at col. 3, II. 56–59 (emphasis added). Thus, according to the written description, it is not only the rigid elongated members, or the jaw ends of those members, that must be "slideable and pivotable"; the "fastening means" *itself* must be "slideable and pivotable" as well.

■ ACI further argues that a rotatable pawl structure is an element of the preferred embodiment that should not be

read into claim 1, as it is expressly recited in dependent claim 3. We again disagree. Under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187, 48 USPQ2d 1001, 1005 (Fed.Cir.1998). However, claim differentiation is not a "hard and fast rule of construction," and cannot be relied upon to "broaden claims beyond their correct scope." *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368, 53 USPQ2d 1814, 1818 (Fed.Cir.2000) (citations and quotation marks omitted). Moreover, the judicially created doctrine of claim differentiation cannot override the statutory requirements of § 112, ¶ 6. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538, 19 USPQ2d 1367, 1371 (Fed.Cir.1991). In *Laitram*, we specifically held that the stringencies of a means-plus-function limitation could not be avoided by merely adding a dependent claim that recites the corresponding structure disclosed in the specification. *Id.* at 1538, 19 USPQ2d at 1371. Accordingly, to the extent that dependent claim 3 recites structure that corresponds to the claimed functions of the "fastening means" limitation, the doctrine of claim differentiation does not negate the conclusion that the "slideable and pivotable fastening means" limitation in claim 1 is limited to the corresponding structure described in the specification and equivalents thereof, which includes a pawl that is "slideable and pivotable."

Because the district court's determination that ACI had established a likelihood of success on the issue of infringement was based on an erroneous construction of the "slideable and pivotable fastening means" limitation, an error of law, we conclude that the district court abused its discretion in granting ACI's motion for a preliminary injunction. In view of this conclusion, we need not address Olympia's additional arguments regarding whether the district court abused its discretion in concluding that ACI had been irreparably harmed. Accordingly, we vacate the preliminary injunction and remand for further proceedings consistent with this opinion.