NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THE CHAMBERLAIN GROUP, INC.,**
*Plaintiff-Appellee*

**v.**

**TECHTRONIC INDUSTRIES CO. LTD.,
ET TECHNOLOGY (WUXI) CO. LTD.,**
*Defendants*

**TECHTRONIC INDUSTRIES NORTH AMERICA,
INC., ONE WORLD TECHNOLOGIES, INC., OWT
INDUSTRIES, INC., RYOBI TECHNOLOGIES, INC.,**
*Defendants-Appellants*

---

2016-2713, 2017-1220

---

Appeals from the United States District Court for the Northern District of Illinois in No. 1:16-cv-06097, Senior Judge Harry D. Leinenweber.

---

Decided: January 25, 2017

---

KATHERINE VIDAL, Fish & Richardson, PC, Redwood City, CA, argued for plaintiff-appellee. Also represented by BENJAMIN ELACQUA, MICHAEL RUECKHEIM, Houston, TX; MARIA ELENA STITELER, Minneapolis, MN.

JASON C. WHITE, Morgan, Lewis & Bockius LLP, Chicago, IL, argued for defendants-appellants. Also represented by MICHAEL J. ABERNATHY, SANJAY K. MURTHY, NICHOLAS A. RESTAURI; WILLIAM R. PETERSON, NICHOLAUS E. FLOYD, Houston, TX; JULIE S. GOLDEMBERG, Philadelphia, PA.

---

Before LOURIE, TARANTO, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Techtronic Industries North America, Inc., One World Technologies, Inc., OWT Industries, Inc., and Ryobi Technologies, Inc. (collectively, "TTI") appeal from the decision and order of the United States District Court for the Northern District of Illinois granting The Chamberlain Group, Inc.'s ("CGI") motion for a preliminary injunction. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2016 U.S. Dist. LEXIS 129809 (N.D. Ill. Sept. 15, 2016) ("*Decision*"); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, ECF No. 111 (N.D. Ill. Sept. 20, 2016) (J.A. 19–20). Because the district court erred as a matter of law in its claim construction, and concluded that CGI is likely to succeed on the merits of its infringement claim and that a preliminary injunction should therefore be granted on the basis of that incorrect construction, we *vacate* the preliminary injunction.

BACKGROUND

CGI owns U.S. Patent 7,224,275 (the "'275 patent"), which is directed to garage door openers that wirelessly transmit status information. CGI entered the garage door opener market in 1958. CGI sells its garage door openers in several stores, including Home Depot.

Claim 1 of the '275 patent is exemplary and reads as follows:

A movable barrier operator comprising:

a *controller having a plurality of potential operational status conditions* defined, at least in part, by a plurality of operating states;

a movable barrier interface that is operably coupled to the controller;

a wireless status condition data transmitter that is operably coupled to the controller, wherein the wireless status condition data transmitter transmits a status condition signal that:

corresponds to a present operational status condition defined, at least in part, by at least two operating states from the plurality of operating states; and

comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator.

'275 patent col. 8 ll. 5–21 (emphasis added).

Claims 2 and 5 depend directly from claim 1, and claim 3 depends from claim 2. *Id.* col. 8 ll. 22–27, 30–46. Claim 2 recites that the movable barrier "further comprises at least one *condition status sensor* that is operably coupled to the controller." *Id.* col. 8 ll. 22–24 (emphasis added). Claim 3 recites transmission of "data that corresponds to the at least one condition status sensor." *Id.* col. 8 ll. 25–27. Claim 5 recites a plurality of operating states at least one of which must be included in the movable barrier, including "detecting a likely presence of an

obstacle to movement of the movable barrier;" "detecting a likely proximal presence of a human;" and "detecting a likely proximal presence of a vehicle." *Id.* col. 8 ll. 30–46.

TTI manufactures and sells power tools and accessories under the brand name Ryobi. In May 2016, TTI began selling the Ryobi GD200 garage door opener ("Ryobi GDO"). TTI sells its Ryobi products, including the Ryobi GDO, exclusively through Home Depot.

In June 2016, CGI sued TTI alleging that the Ryobi GDO infringed the '275 patent,[1] and moved for a preliminary injunction. The district court granted the motion with respect to claims 1 and 5 of the '275 patent.

The district court found that CGI had shown a substantial likelihood of success on the merits of its infringement claim. The court construed "controller" in claim 1 to be a "self-aware [controller], *i.e.*, that it did not rely upon any external sensors to obtain the status conditions of the [garage door opener], and which it was able to transmit upon request." *Decision*, 2016 U.S. Dist. LEXIS 129809, at *9. The court stated that, due to differences between claims 1 and 2, "[c]laim 1 eschews condition sensors in favor of a controller that does not rely on external sensors." *Id.* at *10. The court further reasoned that, during prosecution, "the only way to distinguish the '275 patent from the prior art was for the examiner to

---

[1]  CGI also alleged infringement of U.S. Patent 7,635,966 (the "'966 patent"). This case, however, is a limited appeal of the district court's grant of a preliminary injunction, and the preliminary injunction does not extend to the claims of the '966 patent. Accordingly, the '966 patent is not before us today and will not be discussed. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1333 n.1 (Fed. Cir. 2006).

conclude that the '275 patent does not rely on external sensors." *Id.* at *12.

In construing "controller," the district court also rejected TTI's argument that requiring the "controller" to be self-aware would render dependent claim 5 inoperable because some of its listed operational states require external sensors. The court noted that the operational states "do appear to require external sensors." *Id.* at *10. The court, however, rejected TTI's argument because CGI's expert testified that those operational states "might through future invention be able to be sensed by the controller without external sensors." *Id.* at *10–11.

Applying its "self-aware controller" construction, the court concluded that "[b]ecause none of the prior art suggested by [TTI's expert] taught the concept of the 'self-aware' controller, TTI has not raised a 'substantial question as to invalidity'" of the '275 patent. *Id.* at *12. The court did not make findings regarding whether other claim limitations were disclosed in the cited prior art.

As for the remaining factors considered in a preliminary injunction analysis, the district court found that CGI would suffer irreparable harm based on "clear evidence of price erosion caused by the Ryobi product launch"; "basic economic reasoning dictat[ing] that [reduced CGI market share] should be suspected"; and a "substantial risk" of lost profits, including for accessories. *Id.* at *18–19. The court also found that the balance of the hardships favored CGI and that the public interest factor favored a preliminary injunction. *Id.* at *20.

Subsequently, the district court issued an order enjoining TTI from "making, using, selling, or offering to sell in the United States or importing into the United States the Ryobi GD200 garage door opener in a configuration that infringes claims 1 and 5 of the '275 [p]atent under the Court's Memorandum Opinion or products that are not colorably different therefrom." J.A. 20.

TTI appealed from the grant of the preliminary injunction and moved to stay the preliminary injunction pending appeal.  On November 1, 2016, a motions panel of this court denied TTI's motion.  The panel "conclude[d] that while TTI has demonstrated likelihood of success on the merits, it has not established any of the other three factors, and that given its failure to demonstrate irreparable injury, it has not established that a stay of the preliminary injunction pending appeal is warranted here." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16-2713, slip op. at 2 (Fed. Cir. Nov. 1, 2016).

We have jurisdiction pursuant to 28 U.S.C. § 1292(c) in view of §§ 1292(a) and 1295(a)(1).

DISCUSSION

I.

The grant or denial of a preliminary injunction is within the sound discretion of the district court, and we will not reverse its judgment absent an abuse of that discretion.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).  Accordingly, we will only overturn a decision granting a preliminary injunction on appeal if "the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).  We review the district court's conclusions of law *de novo.  Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant must establish *both* "likelihood of success on the merits *and* irreparable harm" for the court to grant a preliminary injunction. *Amazon.com*, 239 F.3d at 1350 (emphasis added).[2] Thus, where the accused infringer "raises a 'substantial question' concerning validity, enforceability, or infringement (*i.e.*, asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue." *Genentech*, 108 F.3d at 1364.

## II.

We first consider whether the district court erred in its claim construction. We review a district court's ultimate claim constructions *de novo* and any underlying factual determinations involving extrinsic evidence for clear error. *Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015). Here, because the intrinsic record alone determines the proper construction of "controller," we review the district court's construction *de novo*. *See David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016), *cert. denied*, No. 16-713, 2017 WL 69299 (U.S. Jan. 9, 2017); *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1364, 1368 (Fed. Cir. 2015) (citing *Teva*, 135 S. Ct. at 840–42).

The words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Because that meaning is "often not

---

[2]    Although TTI also challenges on appeal the district court's conclusions regarding irreparable harm, we only reach the district court's analysis of likelihood of success on the merits because it is dispositive. *See Nat'l Steel Car*, 357 F.3d at 1325 n.5.

immediately apparent, and because patentees frequently use terms idiosyncratically," the court looks to the intrinsic record, including "the words of the claims themselves, the remainder of the specification, [and] the prosecution history," as well as to extrinsic evidence, when appropriate, to construe a disputed claim term. *Id.* at 1314, 1319. The specification "is the single best guide to the meaning of a disputed term," and "is, thus, the primary basis for construing the claims." *Id.* at 1315 (internal citations and quotation marks omitted). Accordingly, "while extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (quotation marks omitted); *see also id.* at 1318 ("We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons.").

TTI argues that the district court improperly construed "controller" in claim 1 to read a "self-aware controller" limitation into the claims. TTI contends that the plain language of the claim is not limited to a "self-aware controller" and that the specification supports this conclusion. TTI asserts that the district court's claim construction rests on a misunderstanding of the relationship between dependent and independent claims and a misreading of the prosecution history. TTI argues that the district court erred in concluding that, because dependent claim 2 has sensors, independent claim 1 cannot have sensors. TTI also contends that the district court's construction renders claim 5 inoperable.

CGI responds that the district court's claim construction was correct based on the plain language of claim 1, which requires "a controller *having* a plurality of *potential* operational status conditions," '275 patent col. 8 ll. 6–7 (emphasis added), not a controller that can determine actual conditions of external sensors. CGI argues that the

"potential operational status conditions" are *internal* conditions of the controller because the claim terms "having" and "potential" refer to operational status conditions of the controller itself. CGI contends that the district court did not find that because claim 2 has sensors, claim 1 cannot have sensors. CGI also argues that differences in the signal transmissions recited in claims 1 and 3 due to claim 3's dependence on claim 2 support the district court's construction. CGI further asserts that the district court properly rejected TTI's argument that claim 5 is inoperable without using external sensors based on expert testimony and that we must review the district court's factual findings regarding claim construction under the clearly erroneous standard.

We agree with TTI that the district court incorrectly construed "controller" to require that the controller be "self-aware" and to prohibit the controller from "rely[ing] upon any external sensors to obtain status conditions" of the movable barrier. *Decision*, 2016 U.S. Dist. LEXIS 129809, at *9. Claim 1 neither recites nor requires a "self-aware controller." The written description of the '275 patent makes clear that the controller can obtain the operational status conditions through self-awareness or through externally-developed information, *e.g.*, sensors. '275 patent col. 2 ll. 56–64, col. 4 ll. 52–59, col. 6 ll. 33–36.

The written description of the '275 patent uses the term "self-aware" only once. That usage makes clear that, although the controller can be self-aware, it does not need to be self-aware. The written description states:

> Depending on the needs of the setting, the *controller 11 can be self-aware* of such operational status conditions (as when, for example, the controller 11 is aware that it has switched a given ambient light fixture on or off) *or the controller 11 can be provided with externally developed information regarding the condition.* To effect the latter, it

may be desirable in some settings to use one or more *status condition sensors* 14.

*Id.* col. 4 ll. 52–59 (emphases added).

CGI's arguments regarding the language of claims 1 and 3 do not compel the district court's construction. As discussed above, the written description contemplates both self-aware controllers and controllers that rely on sensors. Moreover, the written description does not support CGI's assertion that the use of the terms "having" and "potential" in claim 1 demonstrate that the claim is directed to a self-aware controller. For example, the written description explains that, typically, "the controller 11 will *have* a plurality of *potential* operational status conditions." *Id.* col. 4 ll. 5–6 (emphases added). This statement is not limited to self-aware controller embodiments. Similarly, claim 3's dependence from claim 2, rather than claim 1, does not demonstrate that the "controller" of claim 1 must be self-aware.

We also agree with TTI that the district court erred by concluding that "the only reasonable way to reconcile the difference between [c]laim 1 and [c]laim 2 is that *[c]laim 1 eschews condition sensors* in favor of a controller that does not rely on external sensors." *Decision*, 2016 U.S. Dist. LEXIS 129809, at *10 (emphasis added). The inclusion of a particular limitation in a dependent claim does not suggest that the limitation is eschewed by the claim from which it depends. *See Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) (explaining that "construing the independent claim to exclude material covered by the dependent claim would be inconsistent"). Rather, it compels the opposite conclusion. If claim 1 precluded the inclusion of sensors, a claim dependent on it, such as claim 2, could not include sensors. *See* 35 U.S.C. § 112 (2012) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

Additionally, the prosecution history does not support the district court's construction of "controller." In fact, the prosecution history contradicts the district court's conclusion that "the only way to distinguish the '275 patent from the prior art was for the examiner to conclude that the '275 patent does not rely on external sensors." *Decision*, 2016 U.S. Dist. LEXIS 129809, at \*12. Although the applicant noted during prosecution that a particular piece of cited art disclosed a controller "that receives a signal from various sensors," no argument to distinguish the art on this basis was made. *See* J.A. 1187. Moreover, the applicant amended a different limitation and argued for patentability based on that amendment in the same Reply to Office Action. *See* J.A. 1178, 1190. The prosecution history does not support a departure from the plain meaning of "controller" evinced by the specification.

In light of our rejection of the district court's construction of "controller," we need not, and do not, reach TTI's inoperability argument regarding claim 5.

Furthermore, we reject CGI's contention that the district court made any factual findings regarding claim construction that we must review for clear error. As we have explained, the Supreme "Court did not hold that a deferential standard of review is triggered any time a district court hears or receives extrinsic evidence." *Shire Dev.*, 787 F.3d at 1368 (citing *Teva*, 135 S. Ct. at 842). Here, we apply the *de novo* standard of review because "there is no indication that the district court made any factual findings that underlie its construction[]," *id.*, and "the intrinsic record alone determines the proper construction," *David Netzer Consulting Eng'r*, 824 F.3d at 993. *See also Shire Dev.*, 787 F.3d at 1364, 1368 (citing *Teva*, 135 S. Ct. at 840–42).

## III.

We finally consider whether the district court erred in finding that CGI established a likelihood of success on the

merits. To satisfy its burden, CGI must show that "in light of the presumptions and burdens that will inhere at a trial on the merits," CGI will likely (1) prove that the Ryobi GDO infringes the '275 patent; and (2) withstand TTI's challenges to the validity and enforceability of the '275 patent. *Sanofi-Synthelabo*, 470 F.3d at 1374 (quoting *Amazon.com*, 239 F.3d at 1350). Because TTI only challenges the district court's finding that it failed to raise a substantial question of validity, our analysis is limited to that issue.

TTI argues that the preliminary injunction should be vacated because CGI did not establish a likelihood of success on the merits. TTI contends that the district court's finding of a likelihood of success on the merits was based entirely on its erroneous claim construction of "controller." TTI asserts that it raised a substantial question of invalidity under both the court's erroneous construction and the correct construction of "controller."

CGI responds that the district court did not abuse its discretion in issuing the preliminary injunction. CGI asserts that the district court properly construed "controller" and correctly concluded that TTI did not raise a substantial question of invalidity. CGI alleges that it presented reasons that the cited art does not invalidate the claims to the district court in addition to the lack of a "self-aware controller." CGI contends that this court may affirm on the basis of one or more of those reasons even if the district court did not address them in its opinion.

We agree with TTI that CGI has not established a likelihood of success on the merits. As discussed above, the district court incorrectly construed "controller." That incorrect construction was the court's sole basis for determining that TTI had not raised a substantial question of invalidity, *see Decision*, 2016 U.S. Dist. LEXIS 129809, at *12, and, as it was incorrect, we must vacate the grant of the preliminary injunction.

We decline to reach CGI's alternative bases for affirmance because they involve factual issues on which the district court's opinion does not contain factual findings. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts, and . . . the Court of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the District Court." (alterations in original) (quoting *DeMarco v. United States*, 415 U.S. 449, 450 n.* (1974))); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Rather than assess the relevance of the evidence itself and conduct its own balancing of its probative value and potential prejudicial effect, the Court of Appeals should have allowed the District Court to make these determinations in the first instance, explicitly and on the record.").

Based on the foregoing, on this record, and with the proper claim construction, TTI has raised a substantial question of invalidity, and CGI has not demonstrated that the question lacks substantial merit. Accordingly, the district court abused its discretion in granting the preliminary injunction.

## CONCLUSION

We have considered CGI's remaining arguments but find them to be unpersuasive. For the foregoing reasons, we vacate the grant of the preliminary injunction and remand for proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs to TTI.